UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION
CIVIL ACTION NUMBER 2:10-cv-00243

**ELIZABETH CHAPMAN**                                                                                   **Plaintiff**
125 Lake Park Drive
Alexandria, KY 41001

**v.**

U S. Bancorp Investments, Inc. d.b.a. U.S. Bank
800 Nicollet Mall
Minneapolis, MN 55402

And

US Bank National Association, d.b.a. US Bank
800 Nicollet Mall
Minneapolis, MN 55402

                                                                                                        Defendants

Serve Via Waiver of Service of Summons
Counsel for Defendants by Agreement
Doreen Canton
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**AMENDED COMPLAINT WITH JURY DEMAND**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now Elizabeth Chapman, Plaintiff, by and through counsel, and herby files this Amended Complaint adding US Bank National Association, d.b.a. US Bank, as an additional Defendant to this action.

## JURISDICTIONAL ALLEGATIONS

1. Elizabeth Chapman (hereinafter Plaintiff) has now and for all times pertinent to this action, resided within this judicial district.

2. Defendant, U.S. Bancorp Investments Inc., (U.S. Bank) is a corporation with its principal place of business in Minnesota with operations within this judicial district.

3. Defendant US Bank National Association (US Bank) is a corporation with its principal place of business in Minnesota with operations within this judicial district.

4. This Court has federal question subject matter jurisdiction for violations of 42 USC § 2000 pursuant to 28 U.S.C. § 1337 and 1343.

5. This Court has pendent jurisdiction for all state claims set forth herein pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as the majority of the Defendants' discriminatory acts occurred in Campbell County in the Eastern District of Kentucky.

7. Defendants are employers within the meaning of 42 U.S.C. § 2000(e)(b).

8. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000(e)(f).

9. Plaintiff is an employee within the meaning of K.R.S. § 342.0011.

10. Defendants are employers within the meaning of K.R.S. § 342.0011.

11. Defendants conducted business in the county of Campbell and in the State of Kentucky on a continuous basis at all times relevant hereto.

12. Defendants acted by and through its agents, servants, or employees who were acting within the scope of their employment at all times relevant hereto.

**FACTS RELEVANT TO ALL CAUSES OF ACTION**

13. Plaintiff reiterates and incorporates by reference each allegation contained in Paragraphs 1 through 12 as though rewritten verbatim herein.

14. On November 7, 2008, Plaintiff, Elizabeth Chapman, began employment with US Bank as a Branch Manager.

15. As of November 7, 2008, Melissa Yeager was employed as Assistant Branch Manager.

16. In early 2009, Plaintiff's Supervisor, District Manager Ray DePaoli, expressed displeasure with Ms. Yeager's performance and requested US Bank's Human Resources demote Ms. Yeager to her former position.

17. Human Resources would not approve the demotion and advised Mr. DePaoli to document any concerns with Ms. Yeager's performance.

18. Mr. DePaoli directed Plaintiff to begin documenting performance issues with Ms. Yeager. .

19. In August 2009, Plaintiff and Mr. DePaoli spoke with Ann Steinke, Vice President of Human Resources, regarding Ms. Yeager's performance issues.

20. Based on Ms. Yeager's documented performance issues, Ms. Steinke prepared a written warning/action plan for Ms. Yeager and instructed Plaintiff to insert Ms. Yeager's job duties, customer complaints, and the dates and amounts of losses the branch had sustained as a result of Ms. Yeager's errors.

21. On August 21, 2009 Ms. Steinke conducted a telephone conference at which Ms. Yeager was presented the warning/action plan which was signed by both Plaintiff and Ms. Yeager.

22. On August 24, 2009 Ms. Yeager requested and took a medical leave of absence.

23. While Ms. Yeager was on medical leave, Mr. DePaoli informed Pliantiff that she would need to hire someone to replace Ms. Yeager for the position of Assistant Branch Manager.

24. Plaintiff interviewed candidates for the position and recommended Gina Jones.

25. Mr. DePaoli rejected Gina Jones for the position, instructed Plaintiff to continue interviewing candidates, and ultimately approved Jason Guthier for the position.

26. Mr. Guthier was offered the position and given until November 9, 2009 to accept the offer.

27. On October 27th Plaintiff learned Ms. Yeager had filed an EEOC Charge of gender discrimination against the US Bank claiming Plaintiff preferred male candidates and Plaintiff intended to hire a male as her replacement.

28. Ms. Yeager's EEOC Charge also alleged she had been retaliated against based on complaints she made to Human Resources. .

29. Plaintiff was never notified of any complaints made by Ms. Yeager to Human Resources other than a complaint she had not been properly trained.

30. On November 5, 2009 Mr. DePaoli informed Plaintiff that Ms. Yeager would be replaced by Polly Neace.

31. Plaintiff asked Mr. DePaoli what she should do about the offer which had been extended to Mr. Guthier to which Mr. DePaoli responded "I'm the District Manager and I can put anybody at any branch I want."

32. Mr. DePaoli informed Plaintiff to replacing Ms. Yeager with Ms. Neace would "take care of the Melissa [Yeager] problem" suggesting he could put Mr. Guthier at an open position at the Taylor's Landing branch.

33. Plaintiff interviewed Ms. Neace and via e-mail on November 10, 2009 expressed Mr. DePaoli the concerns she had about hiring Ms. Neace.

34. The November 10, 2009 e-mail was carbon copied to Human Resources.

35. In November 10, 2009 e-mail, Plaintiff reported that, in her interview, Ms. Neace said she wanted to work at the Taylor Landing branch, not the Cold Spring branch, and felt she was being punished for having filed a harassment complaint against an investment banker who worked out of the Taylor Landing location.

36. In the November 10, 2009 e-mail, Plaintiff pointed out that Mr. DePaoli had previously planned to give Ms. Neace the Taylor Landing position.

37. In the November 10, 2009 e-mail Plaintiff reported that in the interview Ms. Neace had inquired whether there would be a "witness present" on the days she had to work with the investment banker against whom she had lodged the harassment complaint since the investment banker also worked out of the Cold Spring location.

38. In the November 10, 2009 e-mail Plaintiff expressed her concern that Ms. Neace indicated in the interview that she was a "package deal" with another employee and Ms. Neace had asked permission to remove the art displayed at the branch and replace it with her photography which she sold as a side business.

39. On November 11, 2009, Plaintiff received a message that Mr. DePaoli wanted to meet with her.

40. On November 11, 2009, Tina Whitesell in Human Resources told Plaintiff she should not have put her concern about hiring Ms. Neace in writing.

41. On November 17, 2009 Plaintiff met with Mr. DePaoli and Kyra Murphy, Human Resource Representative for three (3) hours regarding Ms. Yeager's EEOC Charge.

42. In the November 17, 2009 meeting, Mr. DePaoli and Ms. Murphy questioned Plaintiff about her decision to document Ms. Yeager's performance issues.

43. Plaintiff reminded Mr. DePaoli and Ms. Murphy that they had instructed her to document Ms. Yeager's performance issues.

5

44. In the November 17, 2009 meeting, Mr. DePaoli and Ms. Murphy questioned Plaintiff about male employees who had been hired at Plaintiff's branch and accused Plaintiff of preferring male candidates over female candidates.

45. Plaintiff reminded Mr. DePaoli and Ms. Murphy that Mr. DePaoli had assisted in hiring employees for the branch, had been involved in interviews, and had approved all the hires.

46. Plaintiff reminded Mr. DePaoli and Ms. Murphy that she had recommended Gina Jones to replace Ms. Yeager but Mr. DePaoli had rejected that recommendation and approved the hiring of Mr. Guthier.

47. In the November 17, 2009 meeting, Ms. Murphy questioned Plaintiff about an August 2009 robbery which had occurred at the Cold Spring branch and accused Plaintiff of failing to disclose to law enforcement the fact that she was not in the bank during the robbery.

48. Plaintiff responded she had disclosed this to both the responding officer and the bank counselor sent after the robbery.

49. At the end of the November 17, 2009 meeting she was being suspended and would be contacted regarding her employment after Mr. DePaoli and Ms. Murphy discussed the matter with John Fickle and Anne Steinke.

50. On November 18, 2009, Plaintiff was told her employment was being terminated because there were "discrepancies" in her answers during the EEOC investigation and the bank had to be able to "trust their managers."

51. On March 25, 2010, Plaintiff filed a Charge with the EEOC alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended.

52. On August 25, 2010, the EEOC issued a Notice of Right to Sue letter.

**COUNT I RETALIATION IN VIOLATION OF 42 U.S.C.S. § 2000E-3(A)**

53. Plaintiff reiterates and incorporates by reference each allegation contained in Paragraphs 1 through 52 as though rewritten verbatim herein.

54. Plaintiff opposed a practice made unlawful pursuant to Title VII.

55. Plaintiff assisted and participated in an investigation pursuant to Title VII.

56. Plaintiff was discriminated and retaliated against because of her opposition to a practice made unlawful pursuant to Title VII.

57. Plaintiff was discriminated and retaliated against because she assisted and participated in an investigation pursuant to Title VII.

## COUNT II RETALIATION IN VIOLATION OF KRS 344.280

58. Plaintiff reiterates and incorporates by reference each allegation contained in Paragraphs 1 through 57 as though rewritten verbatim herein.

59. Plaintiff opposed a practice made unlawful under KRS 344.040

60. Plaintiff's opposition to a practice made unlawful under KRS 344.040 et. seq was a protected activity.

61. Plaintiff participated in US Bank's investigation of Ms. Yeager's Charge of Discrimination.

62. Plaintiff's participation in the investigation of Ms. Yeager's Charge of Discrimination was a protected activity.

63. Plaintiff was terminated.

64. Plaintiff's termination was an adverse employment action taken against her by Defendant

65. There was a causal link between Plaintiff's engagement in protected activities and the adverse employment action taken against her.

66. Mr. DePaoli and Kyra Murphy conspired to retaliate and discriminate against Plaintiff because she opposed a practice declared unlawful by KRS 344.040 et. seq.

67. Mr. DePaoli and Kyra Murphy conspired to retaliate and discriminate against Plaintiff because she assisted and participated in the investigation of Ms. Yeager's EEOC charge of discrimination.

8

WHEREFORE, Plaintiff prays for relief as follows:

A.  For a judgment in a fair and reasonable amount against the Defendant for Damages suffered by the Plaintiff;

B.  For a trial by jury;

C.  For future lost wages and other consequential damages;

D.  For pre and post judgment interest;

E.  For Reasonable attorney fees; and

F.  For any and all other legal and equitable relief to which the plaintiff may be entitled.

Respectfully Submitted,

*//Gail M. Langendorf*
**BUSALD FUNK ZEVELY, PSC**
Gail Langendorf, K.B.A. 86295
226 Main Street
Florence, KY 41042
(859) 371-3600
glangendorf@bfzlaw.com